v. Anthony J. Ferreri, appellant. Ms. Tarmina for the appellant, Mr. Smith for the appellate. Ms. Tarmina, good morning. You may proceed. Good morning. May it please the court. Rosanna Tarimina from the Federal Public Defender's Office for appellant Mr. Anthony Ferreri. I'd like to reserve two minutes for rebuttal. The United States as payee currently has four separate but overlapping money judgments seeking to disgorge Mr. Ferreri and his two co-conspirators of the ill-gotten gains they obtained through their involvement in the scheme to defraud to which they each separately pleaded guilty. The subject of this appeal is the $3.6 million forfeiture order obtained in the context of Mr. Ferreri's criminal case here in the District of Columbia. But before the government obtained that order, it also separately obtained civil disgorgement orders in the Southern District of Florida for broader conduct encompassing the criminal conduct charged in D.C. in pre-judgment or pre-interest amounts of $1.8 million for Mr. Ferreri, a partially overlapping $3.4 million for Paul Ferreri, and $82,500 for Douglas Zemsky. The government thus has outstanding money judgments totaling $8.9 million with no offsetting or contribution provisions where there is no allegation that Mr. Ferreri and his co-conspirators benefited from their scheme either individually or combined anywhere near that amount. Although Ms. Teormina, in the briefing in this case, the government has said that it does agree to or would agree to some offset and has consented as I understand it to the District Court entering an order to that effect. So it'd be helpful if you would focus on were that to happen, what would be left? Sure. Yes, Your Honor. While we obviously agree that there should be an offsetting provision for Mr. Ferreri's payments in the Southern District of Florida, the government has did not address and has not conceded. What we believe would need to also happen would be offsetting payments, offsetting Mr. Ferreri and Mr. Zemsky's payments in the Southern District of Florida towards their disgorgement order, offsetting Mr. Ferreri's forfeiture order as the $3.6 million amount purportedly represents collective gains of the three co-conspirators. So there would also need to be the contribution offsetting provision as well. If that were part of what the government were willing to agree to on, as you say, on the notion that the joint and several liability against Ferreri in his criminal case counts gains of, is it, Ferreri and Zemsky. So if the government were to agree with contribution being counted against Mr. Ferreri's forfeiture liability, would there be any prejudice remaining to Mr. Ferreri? There would be unless there was one additional agreement. The prejudice that would be remaining is that he would then have, he has a $3.6 million restitution order. Now we absolutely concede that the government can collect restitution goes to the victims, forfeiture goes to the government. Now there is a provision in section 981 that allows, that authorizes the Attorney General to transfer forfeited property or monies to the victims such that any forfeited money would essentially offset restitution. And that, if that happened in this case, if that was definitely going to happen, then there would really not be any prejudice to Mr. Ferreri because then he would, that $3.6 million would only, even though it would sound in forfeiture and restitution, he would only be paying it once. And no matter what he has to pay the $3.6 million restitution. I thought they'd already agreed. I'm sorry, Tindra. No, please. I thought that was what the government did already clearly agree to was that any amount paid by Mr. Ferreri, which I understand under federal law would first be credited toward the restitution amount would be, would offset his forfeiture liability. First of all, I know that the, the two things, that agreement is not self-executing. But I'm assuming that they would be willing to jointly move the district court to have an order entered to that effect. Yes, which, yes, I, I, I know that that agreement accounts for prospective payments. I will certainly, while, while Mr. Smith is arguing, I will certainly confirm that that agreement also accounts for payments in the future as opposed to, sorry, the agreement accounts for past payments because Mr. Ferreri before entering into this agreement made several payments to individual victims that were never credited to him. So I know that agreement accounts for those payments. I have to make sure that it also accounts for the prospective because that, that agreement wasn't the, the court didn't, didn't enter that agreement. It's not currently, I think, like I said, I don't believe it's self-executing. I've talked to the clerk's office and they need the court to sign off on it and he declined to do so. We can obviously ask Mr. Smith about this, but I mean, it's really three buckets as I understand this before the agreement, after the agreement, but before now or before any district court order, and then from any district court order going forward into the future. And we'll hear from why not on which part. Yeah. And certainly to be clear that it's not to concede that the forfeiture order is of $3.6 million is correct. It's only, I think, agreeing to the fact that there would be no tangible prejudice if it remained in effect. So I still believe that the forfeiture order is incorrect at $3.6 million. It should be, we would need further development on exactly what it should be, but it should sound in, in the $1.2 million range, referencing the Southern District of Florida pleadings. But, but I do, I do concede that there would be no tangible prejudice if, if the government doesn't plan to collect twice the forfeiture on top of the restitution. But I do, but I do want to point out that we, we understand that the government can collect restitution and forfeiture separately. And that's what we are worried about in the, in this case, because like I said, if it collects right now, it has several outstanding, outstanding orders from numerous people, none of which reference each other. And, and Mr. Ferrari at the very least is on, is on the hook for much more than he, than he obtained through the scheme to defraud. But absolutely, Your Honor, if, if, if those agreements were in place, there would be no tangible prejudice to Mr. Ferrari. The, the government does also concede at this point in the, not in this point in the proceedings, but at this point in the state of law that the Supreme, the Supreme Court's holding in Honeycutt does apply to the forfeiture statutes in this case, which would prohibit at least prospectively the forfeiture of money and, or property under a theory of joint and several liability. So they do agree that if this case were in a different posture, if we were on plain air review that, that forfeiture amount would be wrong. We are in a different posture. We are in, in effective assistance. But I believe that the fact that the, the error is plain also informs the deficiency of the, of the council's deficiency. Now if the case were brought today, the error would be plain, but at the time it was pre-Count O'Flores and pre-Honeycutt. And so my understanding is that under our case law, it wouldn't have been plain error, but is it nonetheless an effective assistance and how so? Well, that's, that's, that's what we argue. Yes, that, I would say I wouldn't necessarily concede that it wouldn't be plain error. There's case law in this circuit that acknowledges, and I believe that, I know we cite one case in our brief, I believe it may be SOTO, but there's also, I know a, in United States versus Lori's, there is a concurrence that, that details this, that even in the absence of binding precedent, and even in where there's conflicting out of circuit precedent, if we're talking about plain textual language, that an error can still be plain, that this court can recognize the error as plain, but even so. You focus on the language, but the word obtained doesn't appear in the statute here, and the word that was really the focus of the Count O'Flores analysis. And so it has to be more conceptual, doesn't it? Your argument has to be, well, what forfeiture is, is the, you know, having in hand or getting or taking or obtaining a property, and that, that therefore it should be measured differently from the victim's loss, which is, you know, I think your brief does a based on what legal sources was that an error that was sufficiently evident that it should have been raised by competent counsel. Sure. Well, two, two answers to that. Well, one, the government does concede that Honeycutt, Honeycutt now, now does answer this question. So I'd be curious why the government takes that position itself. But my answers to the outside of that are the fact that there are, there are forfeiture at the forfeiture allegation in this case, the plea language, and then the consent order of forfeiture itself uses the words obtained directly and indirectly. It uses the words that are in, that are the operative, the operative language in Honeycutt. So the actual, even if, even if counsel didn't look up the statutes, the actual documents in this case that are binding the plea document most operatively uses that language. Second, 981 is a civil, is a civil forfeiture statute. It needs to be incorporated into the criminal proceedings through the other statutes that the, that the government cites in, in the forfeiture allegation and in the plea document and in the do use the word obtained. So I think that that may be, that may be one of the reasons that the government is conceding that Honeycutt does, does govern, but the government itself who, who wrote the plea agreement used the word obtained in its plea agreement. So even on the language that Mr. Ferrari agreed to, it says that he he's agreeing that this amount represents the, the money that he obtained through the results of the scheme. And that's just not the government, the government believes that, that he obtained that amount of money either. Let me ask you counsel about this attempt, I guess, by Judge Sullivan to transfer jurisdiction to the Eastern District of New York. He hasn't done it on the DC, DDC docket yet. So we have But, you know, tell us what you know about this, because why should we tie the hands of the Eastern District of New York? My understanding is that that is a transfer of jurisdiction only for purposes of supervision. So it's not a transfer of the entire, of the, of the case. It's a transfer of the Eastern District of New York can supervise Mr. Ferrari, because that's where he lives. And that commonly happens in cases where our clients do not live within the jurisdiction, they're supervised outside of the jurisdiction. And so you transfer the jurisdiction for supervisory purposes. But the case remains here, I apologize. That has not been affected yet. Not, I actually do. My understanding is that Mr. Ferrari's probation officer is, is in New York, it's not, he's not being supervised by DC. But, but again, the case itself hasn't been transferred. So if Mr. My understanding is, in light of that, if Mr. Ferrari were to violate his supervised release, he would be violated here in DC, before Judge Sullivan, even, and not, not in New York. All right. So when that's, that is, that is just my, my understanding. So this is a limited transfer of jurisdiction for supervision, which hasn't been affected. And when it is affected, it has no relevance to the, the issue we're dealing with the forfeiture and restitution. Yeah. All right. Yeah, it would have my under, that, that is my understanding that it would have no bearing on this court's jurisdiction. Judge Rao, do you have any more questions? Or do you have any questions? I do not. Thank you. All right, Mr. Smith. Thank you. Mr. Smith. Thank you very much, Your Honor. May it please the court. Peter Smith on behalf of the United States. The district court did not err in rejecting appellant's ineffective assistance of counsel claim. And I'll address initially the deficient performance prong of the Strickland analysis. The defense counsel made a reasonable strategic decision to advise appellant to accept the very favorable plea offer from the government and not to further contest what the parties below described as the loss amount, which was all of these things put together in the government's plea offer to appellant, which included the forfeiture and included the restitution amount. And it included, you know, the terms of the offenses to which appellant pled guilty and other benefits he received in terms of his guideline range. For example, the prospect of 5K departure from the otherwise applicable guideline range. Both during the evidentiary hearing in this case, both defense counsel and appellant himself testified that the government insisted on what they called the loss amount, which was both the same amount for the amount of forfeiture and for the amount of restitution. And that did not give defense counsel room to negotiate that amount. The government's plea offer was tendered with a two day turnaround and defense counsel and appellant had to make that decision quickly. So it was certainly a reasonable strategic decision on counsel's behalf. And then I wanted to make a couple of points about before you just go ahead. Go ahead. Oh, thank you. Um, Mr. Smith, I had a question about the basis for the government seeking forfeiture here. So the government cites 28 USC 2461 C, which sets out the requirements for forfeiture. And then it cites 18 USC 981, which provides for forfeiture for certain offenses. This doesn't include mail fraud, the offense that pleaded guilty to. So I'm wondering what the statutory is there another cross reference for why the government can seek forfeiture for mail fraud here? I guess I have two responses, Your Honor. First of all, I'm not I don't think appellant has raised that argument that the government lacks authority for the forfeiture award. And my understanding from briefing this case was that there was a basis that the fraud, the count of conviction, the mail fraud or was a basis for forfeiture. So under what statute? I mean, I think so. I mean, forfeiture is a pretty serious penalty. So it seems the government should know what statute it is imposing forfeiture under, whether or not the appellant raises that. I mean, I understand. And all I'm saying is I don't know off offhand. I remember when preparing the government's brief that I looked at the statutory authority and I believed that there was authority for that. But since appellant hasn't briefed that or raised that argument on appeal, I didn't look at that in preparation for today's argument. But I believe that there is authority for that. OK, that does seem worrisome to me that the government can't state the statutory authority for its forfeiture penalty. It seems like that should be a pretty straightforward question. Well, it would be your appellant. We're raising a challenge to the forfeiture award or the judgment, but he's not. He's raising an ineffective assistance of counsel claim. I understand that. OK, and under that claim, we would be looking at whether counsel's actions were reasonable both on the deficiency prong and then whether appellant has shown a reasonable probability of a different result on the prejudice prong. So, Mr. Smith, on the on the you talk about the benefits that Mr. Ferreri obtained, and it does seem like if this were in fact a strategic decision that it might be reasonable. But the record really shows, as you mentioned, and I appreciate the the accuracy and fastidiousness of your characterization that you talked about what the court and the parties characterize as the loss amount. And it's very clear reading the record that they were really equating loss amount and the amount gained unlawfully gained through this conduct. And so it's hard to say that there was even consciousness of this, what we now know in light of kind of Floris and Honeycutt to be an error, that there was even consciousness and therefore a strategic decision being made at the time that one could characterize as reasonable or not. I mean, if it's the kind of error that nobody's really paying attention to in counsel for Mr. Ferreri had said to the government, look, you know, the total amount in terms of restitution should be the 3.6 or eight, but six, but the forfeiture amount, you know, because it's measuring something different should be lower. It's not clear that the whole deal would have fallen apart and that the benefits that Mr. Ferreri stood to gain from a concern about effectiveness or not. Well, I think I have three responses, your honor, starting with the last part of your honors point. I think it is speculative to think that the government that had defense counsel taken on the forfeiture plate that the government would have simply acceded to that and not otherwise change the terms of the agreement. I think that's purely speculation. And under the Strickland standard where a pound bears the burden of showing a reasonable probability of a different result, he hasn't proven that. And then I have two other responses. One is that the government treated all of these amounts as part of its plea agreement. So I guess part of my response is that defense counsel had to play on the government's playing field, given the terms of the plea offer. The other part of my response is that there was a reason that all of the parties below used these, the term loss amount as sort of heuristic to mean all of these different amounts. And that's because on the facts of this case, the loss amount and appellant's proceeds were the same. Appellant's scheme was one where he sold worthless stock to his clients. So it seems to me that the losses in this case were the same as appellant's proceeds. And therefore there was- I don't think really, because the proceeds, he guides his clients to buy stock that aren't worth what they're supposed to be worth. The sellers of the stock, who are the co-defendants, actually receive that money from Mr. Ferrari's clients. Mr. Ferrari never himself in any kind of ownership terms received any of that money, right? He gets kickbacks then from the co-defendants, but the amount that he ever had in his possession and control wasn't the entire loss amount, was it? Yeah, I would agree with that. And I would say that he got 800 and something like $820,000 from Ferrari. I think what the court is referring to or suggesting is the joint several liability issue. The forfeiture amount is clearly predicated on joint several liability, which as has been discussed a little bit earlier this morning, was proper at the time of the plea agreement. And appellants has made this argument on appeal many years later that appellant's counsel should have somehow anticipated the result in Cana Flores. But it simply isn't, it wasn't at that time that obvious that appellant's counsel should have anticipated that. It was much more of a legal issue. And also this was in the context where appellant received a very favorable plea offer. Appellant and appellant's counsel were both focused on reducing appellant's term of incarceration. Each of the dismissal counts, for example, the mail fraud and ware fraud counts, I believe, were a 20-year maximum term of incarceration. And appellant also had the prospect of the 5k departure from the guidelines range. He also got an adjustment for accepting responsibility. So he did get an extremely favorable plea offer. And when you're evaluating ineffective assistance, you've got to consider that context. Of course, of course. I wonder if you could address the points that we asked Ms. Terimina about in terms of the government's, I think, quite reasonable proposal to offset and just, you know, the ineffective assistance issue, we could theoretically dispose of it on the lack of prejudice, but that would require us to determine that there was in fact a lack of prejudice. And I'm not sure that what the government's offering is sort of all eliminates what I think of perhaps as at least three separate sources of prejudice. So could you address what the government is willing to move the district court to do in terms of counting the various relevant payments here? Yes. I understood that government's offer, which is set, I don't know what I'll be in, but the exact, the prosecutor's statement is recited in the government's brief, exactly what he agreed to and the citation for it. And my understanding of that is that any amounts appellant pays either in disgorgement or in forfeiture or in restitution would be offset against the other. And what the prosecutor was saying during the remand hearing was that the government's already done that for the payments appellant had made previously. And that I understood the prosecutor to be saying that any subsequent payments would also be offset. And that was the discussion that we had, we meaning U.S. Attorney's Office, internally in we understood that to be the case and that we would agree to the entry of an amended order, making that clear, that offset clear. I don't know if you have authority to respond, but one of the points that Ms. Tarimina raised was, given the claim of ineffectiveness with respect to the joint and several liability for restitution, the briefing, the government's briefing doesn't undertake to credit any payments, however unlikely that Mr. Harari or Zemsky might make to satisfy their obligations, restitution obligations. In other words, part of the amounts on which the joint and several liability, forfeiture liability against Harari are based. And I don't know if the government, I mean, that would, that would be a prejudice claim that, and I wonder if the government's in a position to say that, that were they to be able to make payments against their obligations, would those also be credited against Mr. Harari's joint and several forfeiture liability? Well, the short answer, your honor, is that, you know, we didn't discuss that beforehand. So I wouldn't know the government's position on that. The reason we didn't is because I had never heard that, any mention of that sort of offset until today. I know that Appellant Jones joined the idea of joint and several liability and argued that defense counsel should have anticipated that, but I've never heard the argument about offsetting payments that Harari or Zemsky made until today. But I would add a couple of things to my response. And one is that the forfeiture judgment itself and the restitution order, both of those orders, which are part of the court's judgment, are not before this court in the sense that Appellant can directly challenge those orders. And he has, he hasn't on appeal. He's raised an ineffective assistance claim. And I would wonder whether Appellant's new argument about prejudice is really a prejudice argument or whether it's really a challenge to those, the judgment or those orders over which this court lacks jurisdiction, not only because Appellant never raised it, but because Appellant can't challenge those orders directly. He can only raise an ineffective assistance challenge. Right. And I mean, I guess, I mean, I think they're before us in the sense that were we defined in effectiveness with respect to either of the two related theories, which I understand to be one, that it's double counting against Mr. Ferrari to make him liable both for disgorgement and criminal forfeiture. And two, just looking at the criminal forfeiture, that it was ineffective not to limit his forfeiture to his own gains and therefore the joint and several issue, the failure to sort of push back or at least raise or identify or even be aware of that, but also have been ineffective. And to the extent that he's making it an effective assistance of counsel claim with respect to one or both of those, if it were a meritorious claim, then the order would be before us now. I mean, I'm assuming that he, so in talking about the prejudice prong, obviously he doesn't get there unless he has crossed the threshold of ineffectiveness, but were the government voluntarily willing to make an undertaking that would eliminate the prejudice that we wouldn't need to reach that threshold issue. I bet. So I'm just trying to explore what really is performance in light of the undertakings. I understand. I mean, if the government did it, if the government did that, I suppose, you know, that would solve part of the court's issue. Or could it co-resolve the whole case? That's what I'm exploring. I'm trying to figure out what actually we have to decide. Yeah, no. Okay. I see what you're saying. In terms of the prejudice, I mean, if the government did that and it would obviously move this question. Right. And I just wonder what interest the government has in resisting that, because it seems like it's, I'm just asking you, what is the government's interest in resisting that? Well, on the first part of the court's question about the offset of the scourgement and the forfeiture, we've already agreed. We've already agreed that we would do that. So that's the first part. The second part, I guess, the question is, in order to reach that, the court's got to find deficiency. I mean, Strickland says, you go through this analysis, and if you fail on either prong, if you're the defendant, you can't prevail. And so it's appellant's burden to show both deficiency and prejudice. Of course. He, you know, he wouldn't, you wouldn't necessarily get to that question, even if you disagreed with me on the prejudice point, because there's no deficiency. I mean, I know you're asking me about the prejudice point, but... Right, because we may disagree. I mean, you know, about deficiency, depending on how clear one thinks the concept of forfeiture being about gain and restitution being about loss is, you know, that seems like one could say way before kind of Flores and Honeycutt, pretty clear distinction conceptually between those two things. But I wouldn't say obvious enough that appellant had, that appellant's counsel had a constitutional duty. No, I understand. I understand your position on that. But I'm forward and said, look, we really, we get it and we're willing to do some cross crediting. And so all I'm asking is if you, if the government is also willing to credit payments by the co-defendants toward their restitution amounts as against Mr. Ferrari's it would be helpful for us. And I simply can't answer that. Yeah. Yeah. So it would be helpful to know that. And perhaps you could, you could ask, I mean, if the government has no objection to that, that would obviate need to decide and unnecessary. I'll take that back to the office and we'll, you know, I suppose if the court is asking, which I understand you to be asking, we'll file a letter one way or the other with either stating our position. That would be great. And the other thing that's a little bit unclear to me from the record is with respect to either or both the offset, you know, within Mr. Ferrari's own kind of two columns or the crediting from the other co-defendants pre-agreement, post-agreement, but pre any forward. Is there any distinction in the government's view or, or would it be, you know, assuming that all, you know, whenever it occurred that the crediting offsetting would, would take place. It'd just be helpful, I think, to, to know that. Right. I'm pretty comfortable now saying that, you know, we did discuss that. And my understanding is that we, you know, it is and perspective relief in terms of the offset. I believe that to be the case. So I, I think I can answer that now, but if we're going to file a letter, it means we'll file, you know, explain our position on both. Great. Thank you. All right. Judge Rao, do you have any questions? All right. Mr. Smith before opposing counsel replies. I'm concerned like Judge Rao with whether or not there's a statutory basis for the once council concludes. Well, I'll just say it now. I'd like you along with inquire, you're going to make about the amounts and so forth and the offsets to also address the statutory basis for the forfeiture. And you may need longer to get about the offsets, but I'd like to know frankly, by say noon tomorrow, what the statutory basis is that, that I think you can submit immediately. And well, since we're all here, if that does take care of the case, it takes care of the case. If it doesn't we'll get an order out today about how much time we'll give you to consult with whoever you need to consult with about the offsetting amounts. Okay. I understand your honor. Thank you. All right. All right. Ms. Tamina, why don't you take two minutes? Thank you, your honor. I, because it's also, it would be embarrassing for me to not have raised the issue. I do believe that potentially the, that this, the government's forfeiture authorization is not in the actual subsection that they cited. It's, it looks to be in 981A1Dv, that one. All right. Say that again. A1, what? Oh, A1Dv, which authorizes forfeiture for relating to mail fraud. So that specifically cites 1341. The, the I is, is 1343 for wire fraud. And which is important to note as well, D does contain the obtained directly or indirectly language. So the government's argument with respect to the absence of that language in 981C is, is, is not operative. And so I, I could, I could be wrong. I mean, I could be wrong, but I believe that that's, that's where it is. And that's potentially why we didn't raise, raise that failure. Sure. Sure. And then with respect to, I wanted to say, I pulled up the, the party's joint proposal. That proposal only deals with past payments. It does not deal with how prospective payments will be, will be credited, whether they would be credited to both forfeiture and restitution. So there's still that, that outstanding agreement that we would ask for. I also, two very quick things. Just to clarify, Mr. Reno, the timing. So when you say past, do you mean pre-plea or between the plea and now? Actually, there's, well, there's pre, there were pre, pre-judgment, I suppose. I'll have to check the date of all the payments, but there, there were, there were pre-indictment payments, there were pre-plea payments, and there were pre-judgment payments that Mr. Ferrari, one of the things that he, he, they spoke about at length at the criminal case was brought. And so there was a question about how these, these payments would be credited. And so this agreement allows those payments, the plea agreement referenced those payments and, and, and allowed for offsetting, but, but it was not specific enough. So this agreement addresses those payments. It does not, it does not address prospective payments towards restitution that would be credited towards forfeiture. And again, that is, is permitted, it's permitted, it's discretionary, but we'd ask that the government exercises discretion. And when you talk about prospective, I'm just worried about, so there's, before the judgment, you talked about three categories that precede the judgment, pre-indictment, plea, and then pre-judgment. And then you talk about prospective, but then there's between the judgment and prospectivity. I don't know if anything happened, but there is a period of time that has passed quite a long period of time. And I also would want to, I mean, whoever's describing this needs to describe it in a way that covers unambiguously, whatever periods the government is willing to do this for, which I assume would be all relevant periods, but, but you don't know what it is. And I think that that's, between judgment and now? No, there, there have been payments between judgment and now, the government does, they're de minimis, but, and they're being collected through the probation, I believe, and through the clerk's office. I am unaware of that accounting, but we could, I believe that if there was going to be an agreement, we could find a way to word it such that any payments both, you know, prior and, and in the future, we could certainly find a way to word that. Provided the government were willing to do that. Yes, absolutely. And with respect to the offsetting of the, of the co-defendant, or sorry, not co-defendants, but co-conspirator payments in the Southern District of Florida, the government described that as a new argument. And I don't, I don't believe that that's a new argument at all. It is, it's a way to, it's a remedy, it's a remedy to remove prejudice. So that's, that is, I, it's, I believe that the argument is definitely laid out before the court. Finally, I want, I want to say one more thing, as the government numerous times has described the plea agreement in this case, very favorable. And, and I have to push back on that. The only benefits I can see from this plea agreement versus him just pleading straight to the indictment, which he could have done, and that is, that is something that the court, courts have recognized when you're looking at the prejudice between, in the plea context that you, that you compare the prejudice or the outcome to pleading straight to the indictment is the one additional government moving for one additional point for acceptance of responsibility, which courts have the discretion to grant in any event. And, and also just the, when there's three counts, the court assesses $300 versus when there's one account, one count, they assess $100 in essentially court fees. And so he didn't have to pay the difference in the counts, but Mr. Ferrari, those, those dismissed counts were still considered relevant conduct. So Mr. Ferrari was held accountable in his guidelines calculation for all of the conduct that was, was referenced in the indictment. There was none of that went away. He was precluded from arguing this, this question. He was precluded essentially from arguing against his loss calculation, against his restitution calculation. I would disagree that this was a particularly favorable agreement. So that's your position. Thank you. I just, I just had one thing. I was just looking at the provision that Ms. Tarmina that you cited for including the mail fraud, and I'm not sure that that provision is applicable because it refers to section 1341 relating to mail fraud, but then specifies if such violation relates to the sale of assets acquired or held by the FDIC as conservator or receiver for a financial institution, which is not the case here where Mr. Ferrari, you know, had, you know, you know, his various stocks and companies. So unfortunately I don't think that will be his obligation to provide us a statutory source for this civil forfeiture. My understanding is that it might be under 981A1C, which cross references specified unlawful activity in 1956C7, which cross references 1961C1, which does include 1341, but you'll get back to us on that. The government will get back to us on that. Well, I think both, both of you ought to, by noon tomorrow, submit what you think is the statutory basis for the forfeiture, and then we'll get an order out later about, Mr. Smith, about how much time to consult with your colleagues at DOJ. All right, thank you all, and let's go to the next case.
judges: Henderson, Pillard, Rao